■ In the Matter of CATHERINE K. YOUNG LEVENTHAL MORI-WAKI & ISSACS, LLP, Nonparty Appellant. [787 NYS2d 78]—

In a guardianship proceeding, the nonparty, Young Leventhal Moriwaki & Issacs, LLP, appeals, as limited by its brief, from so much of an order of the Supreme Court, Queens County (Taylor, J.), dated September 2, 2003, as denied its request for an award of an attorney's fee in excess of the sum of $35,241.

Ordered that the matter is remitted to the Supreme Court, Queens County, to set forth the factors considered and the reasons for its determination with respect to the appellant's request for an award of an attorney's fee, and the appeal is held in abeyance in the interim. The Supreme Court, Queens County, is to file its report with all convenient speed.

In 1994 Catherine K. (hereinafter Catherine) suffered a catastrophic medical event which rendered her comatose. Thereafter Catherine became a resident of Waterview Nursing Care Center (hereinafter Waterview), where she remained in a vegetative state until her death in June 2004. From 1994 until April 1999, Catherine's expenses at Waterview were fully paid by her health care insurer, Aetna Insurance Company (hereinafter Aetna). However, in April 1999 Aetna terminated Catherine's benefits. After unsuccessfully attempting to persuade Aetna to reinstate Catherine's benefits, her guardian, Robert A.K. (hereinafter the guardian), began to deplete Catherine's assets in order to pay her monthly care bills at Waterview. In 2002 the guardian retained the nonparty appellant, the law firm of Young Leventhal Moriwaki & Issacs, LLP (hereinafter the law firm), to commence an action against Aetna to recover damages for breach of contract.

The guardian and the law firm entered into a retainer agreement wherein the guardian agreed, inter alia, as follows: (1) to pay hourly rates up to a maximum capped amount of $15,000; if the law firm was successful in obtaining a recovery within this capped amount, then the guardian was responsible only for billable hours plus out-of-pocket expenses, (2) if the hourly fees exceeded $15,000, and the law firm obtained a recovery, the guardian was to pay "the sum of 33⅓ [percent] of any recovery," reduced by any payments which had been made up to that point. The retainer also required the guardian to pay a $5,000 advance against the attorney's fee. However, it is unclear from the record whether or not this advance, or any part thereof, was actually paid.

Ultimately, the action was settled and Aetna agreed, inter alia, to fully reimburse the guardian for the sums he had expended from Catherine's assets to pay for her nursing care (a total of $296,600), and to fully reinstate her prior coverage. Thereafter the law firm brought a motion before the Supreme Court in which it sought an attorney's fee based upon one third of the $296,600, as well as a continuing one third of the monthly amount which Aetna agreed to pay for Catherine's nursing care, once benefits were resumed. However, the Supreme Court granted the motion only to the extent of awarding the law firm a fee of $35,241.

As this Court stated in *Matter of Mavis L.:* "The Supreme Court has broad discretion in determining the reasonable amount to award as an attorney's fee in a guardianship proceeding (*see, Ricciuti v Lombardi,* 256 AD2d 892). However, it must provide a clear and concise explanation for its award in a writ-

ten decision with reference to the following factors: (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, (2) the attorney's experience, ability, and reputation, (3) the amount involved and the benefit flowing to the ward as a result of the attorney's services, (4) the fees awarded in similar cases, (5) the contingency or certainty of compensation, (6) the results obtained, and (7) the responsibility involved (*see, Matter of Freeman,* 34 NY2d 1; *Ricciuti v Lombardi, supra; Matter of Stark,* 174 AD2d 746 )." (*Matter of Mavis L.,* 285 AD2d 509, 510 [2001]; *see Matter of Enid B.,* 7 AD3d 704 [2004]; *Matter of Tijuana M.,* 303 AD2d 681 [2003]). In the case at bar, the Supreme Court stated that "the majority of [counsel's] work was frivolity," without any further explanation. In addition, the Supreme Court did not provide any reasons for its conclusion that the there was a "lack of diligence in the effort of the case."

Accordingly, we remit the matter to the Supreme Court for the purpose of setting forth the reasons for its award, in accordance with the factors enunciated in *Matter of Mavis L. (supra).* Santucci, J.P., Luciano, Schmidt and Rivera, JJ., concur.